## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**ANGELA DORSEY**                              **CASE NO.  6:20-CV-00024**

**VERSUS**                                     **JUDGE JAMES D. CAIN, JR.**

**CITY OF LAFAYETTE ET AL**                    **MAGISTRATE JUDGE HANNA**

### MEMORANDUM RULING

Before the Court is a "Rule 12(b)(6) Motion to Dismiss Amended Civil Rights Complaint for Damages Under 42 U.S.C. § 1983 and Related State Law Claims [R.Doc. 8]" (Recs. 6 and 10).[1] In its motions, Defendant Lafayette Consolidated Government ("LCG") seeks dismissal of the Amended Civil Rights Complaint under 42 U.S.C. § 1983 and related state law claims.

### ALLEGATIONS

In her Amended Complaint,[2] through counsel, Plaintiff Angela Dorsey makes the following allegations: On or about February 20th, 2019, Ms. Dorsey was lying in bed with her boyfriend in his apartment in Lafayette, Louisiana.[3] At about 3:00 a.m., officers from the Lafayette Police Department broke down windows and a door to the apartment to gain

---

[1] Defendant filed the initial Motion to Dismiss (Rec. 6); thereafter, Plaintiff filed an Amended Complaint to cure deficiencies noted in the Motion to Dismiss. Defendant filed the second  Motion to Dismiss (Rec.10). The Court will consider both motions in this Ruling.

[2] Rec. 8.

[3] Id. ¶ 4.

entry.[4] An "Unknown Officer" ordered Ms. Dorsey and her boyfriend to get out of bed and instructed them to put their hands in the air.[5]

Mrs. Dorsey, who was dressed only in her "nighty" complied.[6] Unknown Officer immediately grabbed Ms. Dorsey, forcibly drug her outside and slammed her to the ground.[7] Unknown Officer then handcuffed Ms. Dorsey and placed her under arrest.[8] Ms. Dorsey was placed under arrest for approximately 1.5 to 2 hours and then released prior to being booked into the jail.[9] Unknown Officer took Ms. Dorsey outside of the apartment in the yard; she was not allowed to put on any clothing during the time of her arrest.[10]

Unknown Officer did not have an arrest warrant against Ms. Dorsey, nor were there any exigent circumstances to place her under arrest.[11] During the incident, Ms. Dorsey fractured her toe and was caused to have a blood clot.[12]

Ms. Dorsey alleges that Unknown Officer committed a second-degree battery and unlawful arrest in violation of her constitutional rights under 42 U.S.C. § 1983. Mrs. Dorsey also alleges damages under Louisiana Civil Code articles 2315 and 2320 for the vicarious liability of the City of Lafayette.[13]

---

[4] Id. ¶ 5.
[5] Id. ¶ 6.
[6] Id. ¶ 7.
[7] Id. ¶ 8.
[8] Id. ¶ 8.
[9] Id. ¶ 11.
[10] Id. ¶ 12.
[11] Id. ¶ 8.
[12] Id. ¶ 9.
[13] Id. ¶ 10, 15 and 18.

## RULE 12(B)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that " 'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Hitt v. City of Pasadena,* 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson,* 355 U.S. 41, 45-46, 78 S.Ct. 99, (1957)).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas,* 867 F.2d 877, 880 (5th Cir. 1989).  The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.,* 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations. . . ." *Guidry v. Bank of LaPlace,* 954 F.2d 278, 281 (5th Cir. 1992).  "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Blackburn v. City of Marshall,* 42 F.3d 925, 931 (5th Cir. 1995)."[T]he complaint must contain either direct allegations on every material point

necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio,* 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it demands "more than an unadorned, the defendant-unlawfully-harmed-me accusation."*Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."*Id.,* at 570, 127 S.Ct. 1955.

## LAW AND ANALYSIS

Ms. Dorsey alleges that she suffered Fourth, Eighth and Fourteenth violations of her constitutional rights. Defendant maintains that Ms. Dorsey has failed to plead any cognizable § 1983 claims, that Unknown Officer is entitled to qualified immunity, and that Ms. Dorsey's punitive damages claim is not cognizable against it. Defendant also seeks to dismiss Ms. Dorsey's state law claims because they are barred by discretionary immunity, or alternatively, the Court should decline to exercise supplemental jurisdiction of the state law claims. Finally, LCG seeks to be dismissed because Ms. Dorsey has failed to allege a constitutional deprivation as a result of any official policy or custom.

Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law. Through 42 U.S.C. § 1983, Congress provides a damages remedy for plaintiffs whose constitutional rights are violated by state officials. *Ziglar v. Abbasi*, __U.S. __, 137 S.Ct. 1843, 1854 (2017). To state a claim under § 1983, a plaintiff must (1) allege a violation of a right secured by the Constitution or the laws of the United States; and (2) demonstrate that the alleged deprivation was committed by a person acting under the color of state law. *Randolph v. Cervantes,* 130 F.3d 727 (5th Cir. 1997); *Piotrowski v. City of Houston*, 51 F.3d 512 (5th Cir. 1995); *Leffall v. Dallas Indep. Sch. Dist.,* 28 F.3d 521, 525 (5th Cir. 1994).

Defendant argues that Ms. Dorsey has failed to allege facts in her Complaint, as amended, that constitute a constitutional violation.

*Fourth Amendment violation and Ms. Dorsey's "false arrest"*

The Fourth Amendment bars unreasonable searches and seizures. United States Constitution, Amendment IV. "To determine whether a Fourth Amendment violation has occurred, the complaining party must show he had a reasonable expectation of privacy and that the expectation was one society is prepared to accept as reasonable." *Molette v. City of Alexandria,* 2005 WL 2445432, p. 4. (W.D. La. Sept. 30 2005) (citing *Oliver v. U.S.* 466 U.S. 170, 177, 104 S.Ct. 1735, 1741, (1984)).

Defendant argues that Ms. Dorsey does not allege that there was no warrant for a search of her boyfriend's home or arrest warrant for her boyfriend. She does allege that the Unknown Officer had no warrant for her arrest. Defendant also remarks that Ms. Dorsey does not allege that there was no probable cause for her arrest.

Ms. Dorsey argues that the Amended Complaint alleges that the Unknown Officer was working in the course and scope of his employment while executing a warrant against Joseph Babineaux; Ms. Dorsey further alleges she was not named in the warrant and was not committing any crimes during the warrant's execution.

Defendant cites *Mich. v. Summers,* 452 U.S. 692, 692, 101 S.Ct. 2587 (1981) wherein the Supreme Court held that "[f]or Fourth Amendment purposes, a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain occupants of the premises while a proper search is conducted." Defendant argues that the actions of the "Unknown Officer" in detaining Ms. Dorsey while conducting a search of her boyfriend's home does not rise to the level of a Fourth Amendment violation.

In *Summers,* the Court held that officers executing a search warrant could detain the resident of the place to be searched during the pendency of the search.  The officers encountered the defendant, who lived in the house to be searched, on the steps of the house just as they arrived to search the house.   The officers detained the defendant, requested his assistance in entering the house, and then arrested him when they discovered drugs in the house. The Court noted that the additional violation of his privacy right in being detained during the search of his house was minimal. In a footnote, the Court continued; "Although special circumstances, or possibly a prolonged detention, might lead to a different conclusion in an unusual case, we are persuaded that this routine detention of residents of a house while it was being searched for contraband pursuant to a valid warrant is not such a case. *Id.* at 705. fn. 21, 101 S.Ct. at 2595-2596.

However, in *State v. Williams,* the Fourth Circuit distinguished *Summers.*   In *Williams,* police officers executed a search warrant.  When they arrived at the residence, they discovered defendant Brown, who had just exited the house. They detained her, entered and secured the house, and escorted her inside. There were two other Defendant, Williams and Breely, with a child in the house. The officers advised the women that they were under investigation for narcotics violations, gave them their *Miranda* rights, and informed them they had a warrant to search the house. After they began their search, Defendant Williams offered the officers information as to the whereabouts of the drugs if they would stop the search.  Williams informed the officers that drugs were in her pocket and she had given some to Breely to keep for her. The officers searched the women and found drugs on each of them including Brown.

The trial court suppressed the drugs found on Brown who had exited the house as the police officers arrived to execute the search warrant. On appeal, the court opined that Ms. Brown was not a resident of the house to be searched, nor was she even a known suspect with respect to the narcotics violations connected with the house. The search warrant which was supported by an affidavit did not mention Brown.  The court noted that the only reason Brown was detained was because she happened to be leaving the house when the officers arrived.

In *State v. Range,* 642 So.2d 1318 (La.App. 1st Cir. 8/5/94), the defendant was present during the execution of a search warrant for a crack house.  The officers executing the warrant searched the defendant and found cocaine in his pants pocket. Contraband was found in plain view in two other rooms, but not the room where defendant was found. The

court upheld the validity of the search. The court reasoned that defendant was in a private residence, the access to which was presumably limited, thereby raising "a stronger inference of connection" between the defendant and the house to be searched. The defendant's presence suggested an active role in the drug activities, rather than his just being someone unaware of illegal activities who just happened to be present when the warrant was executed. The court found these factors provided probable cause to believe that the defendant was concealing drugs.

The *Williams* court distinguished *Range* noting that there was no indication when the officers searched her that Brown participated in any drug activity in the house. In other words, Brown had no known connection to the house to be searched other than her exit at the time the warrant was executed. Thus, the search was not authorized.

The instant case did not involve a search of Ms. Dorsey, it involved a detention for approximately 2 hours where she was restrained against her will. The search and arrest warrant of her boyfriend made no mention of Ms. Dorsey. Ms. Dorsey remarks that she should have been searched and immediately released if the officers found that she had not committed a crime or posed a threat to the officers. Ms. Dorsey argues that her "false arrest" violated her Fourth Amendment rights.

Defendant argues that Ms. Dorsey had no reasonable expectation of privacy and the officer were within their right to detain her during the execution of the search and arrest warrant. Defendant notes that Ms. Dorsey's Amended Complaint fails to assert facts concerning words exchanged or the actions of any arrestees or occupants of the searched premises. Concerning the alleged Fourth Amendment violation, Ms. Dorsey only alleges

that she was handcuffed for approximately 2 hours while a search and arrest warrant that did not include her, was being executed.

The Court agrees that the Amended Complaint is deficient of facts to overcome Ms. Dorsey's burden that the officer's detention of her for approximately two (2) hours during the search and arrest warrant of her boyfriend was objectively unreasonable. Consequently, that is fatal to her claim of a Fourth Amendment violation for false arrest.

*Fourth Amendment and Ms. Dorsey's excessive force claim*

Ms. Dorsey contends that the Unknown Officer is liable in his individual and official capacity for alleged excessive force. Ms. Dorsey alleges that during the false arrest, Unknown Officer perpetrated a second-degree battery upon her which caused her to suffer a fractured toe. She also alleges that the Unknown Officer slammed her to the ground and drug her from the home causing her to have a blood clot.[14]

Defendant maintains that Ms. Dorsey has failed to allege sufficient facts to establish a constitutional violation.

"The use of excessive force violates the Fourth Amendment unless 'the officer[s][have] probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer[s] or to others." *Tennessee v. Garner,* 471 U.S. 1,11, 105 S.Ct. 1694 (1985)). To prevail on an excessive force claim, plaintiff must show that the force employed was objectively unreasonable. *Graham v. Connor,* 490 U.S. 386, 397, 109 S.Ct. 1865 (1989). "Excessive force claims are necessarily fact-intensive; whether the force used

---

[14] Amended Complaint, ¶ 9, Rec. 8.

is 'excessive' or 'unreasonable' depends on the facts and circumstances of each particular case." *Darden v. City of Fort Worth,* 880 F.3d 722, 731 (5th Cir.), *cert. denied sub nom. City of Forth Worth v. Darden,* --- U.S. ---, 139 S.Ct. 69, (2018).

"In the excessive force context, a constitutional violation is clearly established if no reasonable officer could believe the act was lawful." *Darden,* 880 F.3d at 727. "Our case law makes clear that when an arrestee is not actively resisting arrest the degree of force an officer can employ is reduced." *Id.* at 731; see *Bush v. Strain,* 513 F.3d 492, 502 (5th Cir. 2008) (holding that it was objectively unreasonable for an officer to slam an arrestee's face into a vehicle when the arrestee "was not resisting arrest or attempting to flee").

"[A]lthough a *de minimis* injury is not cognizable, the extent of injury necessary to satisfy the injury requirement is 'directly related to the amount of force that is constitutionally permissible under the circumstances.'" *Brown v. Lynch,* 524 Fed. Appx. 69, 79 (5th Cir. 2013). "Any force found to be objectively unreasonable necessarily exceeds the *de minimis* threshold, and, conversely, objectively reasonable force will result in *de minimis* injuries only." *Id.* Consequently, "only one inquiry is required to determine whether an officer used excessive force in violation of the Fourth Amendment." *Ikerd v. Blair,* 101 F.3d 430 (5th Cir. 1996). "As long as a plaintiff has suffered 'some injury,' even relatively insignificant injuries and purely psychological injuries will prove cognizable when resulting from an officer's unreasonably excessive force." *Brown,* 524 Fed. Appx. at 79 (quoting *Ikerd,* 101 F.3d at 434).

Defendant defends on the basis of qualified immunity and seeks to have the claims against Unknown Officer dismissed. "A qualified immunity defense serves to shield a

government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Drew v. Town of Church Point,* 2018 WL 1973247, p.4 (W.D. La. 2018) (quoting *Atteberry v. Nocona Gen. Hosp.,* 430 F.3d 245, 253 (5th Cir. 2005)). "Qualified immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096 (1986)). "The bifurcated test for qualified immunity is: (1) whether the plaintiff has alleged a violation of a clearly established constitutional right; and (2) if so, whether the Defendant conduct was objectively unreasonable in light of the clearly established law at the time of the incident." *Id.* (citing *Hare v. City of Corinth,* 135 F.3d 320, 325 (5th Cir. 1998)).

With respect to the first factor, a constitutional right "is clearly established if, in light of pre-existing law, the unlawfulness is apparent." *Id.*  To prevail on an excessive force claim, a plaintiff must show (1) injury, (2) which resulted from the use of force that was clearly excessive to the need, and (3) the excessiveness which was objectively unreasonable. *Rockwell v. Brown,* 664 F.3d 985 (5th Cir. 2011); *Hill v. Carroll County, Mississippi,* 587 F.3d 230 (5th Cir. 2009). In making this determination, the courts recognized that the reasonableness in these circumstances "must embody allowance for the fact that police officers are forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.." *Graham v. Conner,* 109 S.Ct. 1865 (1989); *Hathaway v. Bazany*, 507 F.3d 312 (5th Cir. 2007).

Defendant argues that Ms. Dorsey has failed to allege facts that the Unknown Officer's conduct was "clearly excessive to the need" or "objectively unreasonable." Defendant notes that Ms. Dorsey complains only of a fractured toe, a blood clot, exacerbation of anxiety and depression, and fear of false arrest and excessive force.

In her Amended Complaint, Ms. Dorsey alleges that even though she was compliant with law enforcement, the Unknown Officer immediately grabbed her when she got out of bed, after law enforcement broke the door and a window to gain entry.  Dressed only in a "nighty", Unknown Officer forcefully drug Ms. Dorsey outside, slammed her on the ground and hand-cuffed her.

The Court recognizes that this is only a motion to dismiss, but without more facts as to why Ms. Dorsey was allegedly treated in this manner, we find that it would be premature to make a ruling as to qualified immunity as to the Unknown Officer at this time. The Court finds that Ms. Dorsey has sufficiently alleged specific facts to defeat a qualified immunity defense which, if true, would allow the Court to reasonably draw  an inference that Defendant, Unknown Officer is liable for a violation of Ms. Dorsey's constitutional rights due to the excessive or unreasonable force displayed by Unknown Officer.

*Eighth Amendment violations*

Defendant contends that the Eighth Amendment which bars cruel and unusual punishment, "applies only to sentence inmates." *Culotta v. Lafayette Consol. Gov.,* 2017 WL 5586757 (W.D. La. 2017). The Court agrees that any Eighth Amendment claims as to excessive force is not applicable; therefore, Ms. Dorsey has no claim for a violation of the Eighth Amendment.

*Fourteenth Amendment violation*

The Fourteenth Amendment establishes *inter alia* the right of due process. United States Constitutional Amendment XIII. The Fourteenth Amendment "only begins to protect an individual after an arrest, and after the individual is released from the arresting officer's custody and placed into detention awaiting trial." *Angelle v. Town of Duson,* 2018 WL 4649788, p. 6 (W.D. La. 2018) (citing *Gutierrez v. City of San Antonio,* 139 F.3d 441, 452 (5th Cir. 1998)).

Defendant argues that there are no facts to trigger a claim cognizable under the Fourteenth Amendment, i.e. after an arrest and after the individual is released from the arresting officer's custody and placed into detention awaiting trial.  Defendant remarks that the Amended Complaint alleges that Ms. Dorsey was released prior to being booked into jail.

The Court agrees that the Amended Complaint does not allege any facts to support a constitutional violation of due process under the Fourteenth Amendment.  Accordingly, Ms. Dorsey's claims for a Fourteenth Amendment violation will be dismissed.

*State Law Claims*

Ms. Dorsey alleges tort claims against LCG pursuant to Louisiana Civil Code article 2315 and Louisiana Civil Code article 2320 for vicarious liability.[15]  Ms. Dorsey maintains that LCG is liable for the tortious acts of its employee, the Unknown Officer.

---

[15] A state law action is allowed under supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

Defendant maintains that Ms. Dorsey's state law claims are barred by discretionary immunity, or alternatively, this Court should decline to exercise supplemental jurisdiction over the state law claims. Louisiana Revised Statute § 2798.1(B) provides that "[l]iability shall not be imposed on public entities or their officers or employees based upon the exercise or performance or the failure to exercise or perform their policymaking  or discretionary acts when such acts are within the course and scope of their lawful powers and duties." Defendant argues that Ms. Dorsey has not alleged that the Unnamed Officer acted outside of the scope of his official duties. Thus, Defendant seeks to have the state law claims dismissed.

Ms. Dorsey has alleged that the Unknown Officer was acting within the course and scope of his employment[16] as an officer of the City of Lafayette, Police Department.[17] She further alleges that the Unknown Officer's actions were a second degree battery and aggravated assault and that the City of Lafayette, Police Department is vicariously liable for the delicts of its employees under Louisiana Civil Code article 2320.

Again, noting that this case is in its infancy, and taking the allegations as true, the Court finds that Ms. Dorsey has alleged sufficient facts to support her state law claims.

*Punitive Damages*

In her Amended Petition, Ms. Dorsey alleges that she is entitled to punitive damages for the actions of the Defendant. Defendant moves to have the punitive damages claims dismissed.  "A municipality is immune from liability for punitive damages under 42 U.S.C.

---

[16] Defendant have not challenged Ms. Dorsey's allegation that the Unknown Officer was acting within the course and scope of his employment.
[17] Amended Complaint, ¶ 16, Rec. 8.

§ 1983." *Tickner v. City of Shreveport,* 2017 WL 629227, at *4 (W.D. La. 2017) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 270-71 (1981)). The Supreme Court has held that "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity." *Webb v. Town of St. Joseph*, 2017 WL 916407, at *3 (W.D. La. 2017) (citing *Kentucky v. Graham,* 473 U.S. 159, 161 (1985)). Therefore, Ms. Dorsey's punitive damages claims against LCG should be dismissed.

The Supreme Court has also recognized that punitive damages are recoverable against municipal employees when sued in their individual capacities pursuant to a § 1983 claim. *Williams v. Kaufman County,* 352 F.3d 994, 1015 (5th Cir. 2003). Accordingly, because Ms. Dorsey has asserted claims against Unknown Officer in his individual capacity, her claims for punitive damages against the Unknown Officer should remain.

*§ 1983 official capacity claims*

Initially LCG moved to be dismissed because the original Complaint alleged that the Unknown Officer was being sued only in his personal capacity. In her Amended Complaint, Ms. Dorsey sued the Unknown Officer in both his personal and official capacity.

Official-capacity suits generally represent another way of pleading an action against an entity of which an officer is an agent. *Kentucky v. Graham,* 473 U.S. 159, 105 S.Ct. 3099 (1985). Suits against state officials in their official capacity therefore should be treated as suits against the State. *Graham*, 473 U.S. at 166, 105 S.Ct. at 3105. Because the real party in interest in an official-capacity suit is the governmental entity and not the

named official, "the entity's 'policy or custom' must have played a part in the violation of federal law." *Graham,* 473 U.S. 166, 105 S.Ct. 3105.

State officers sued for damages in their official capacity are not "persons" for purposes of the suit because they assume the identity of the government that employs them. *Will v. Michigan Dept. of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312 (1989).

Defendant argues that Ms. Dorsey has failed to allege any official policy or custom and because she has not alleged that the unnamed officer has such policymaking authority, LCG must be dismissed. Defendant also remarks that Ms. Dorsey had not established that the Mayor-President was either personally involved in the deprivations or that his actions were causally connected to the deprivation.

A municipality may not be held liable under § 1983 solely because it employs a tortfeasor. *Monell v. New York City Dept. of Social Servs.,* 436 U.S. 658, 692 98 S.Ct. 2018 (1978). Instead, the plaintiff must identify a municipal "policy" or "custom" that caused the injury. See, e.g. *Pembaur v. Cincinnati,* 475 U.S. 469, 480-481, 106 S.Ct. 1292, 1298-1299 (1986).

Ms. Dorsey's Amended Complaint fails to identify a municipal policy or custom that caused the injury, nor does it allege that the Mayor-President was personally involved in a deprivation or that his actions were causally connected to the deprivation.

The Court finds that Ms. Dorsey has failed to properly allege facts to support a § 1983 official capacity claim against LCG.

## CONCLUSION

For the reasons set forth above, the motion to dismiss will be granted in part and denied in part.  The motion will be granted to the extent that Ms. Dorsey's claims of a Fourth Amendment violation for false arrest, Fourteenth Amendment claim for violation of due process, Eighth Amendment claims for cruel and unusual punishment, punitive damages against LCG, and § 1983 official capacity claim against LCG shall be dismissed; the motion will be denied as to Ms. Dorsey's other claims.

**THUS DONE AND SIGNED** in Chambers, on this 10th day of June, 2020.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**